UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ADAM DEMARCO and JOSEPH LEE,

                              Plaintiffs,

        -against-

DNVB, INC. (THURSDAY BOOT COMPANY)

                              Defendant.

25-CV-3076 (GHW) (RFT)

**REPORT & RECOMMENDATION**

**TO THE HONORABLE GREGORY H. WOODS, UNITED STATES DISTRICT JUDGE:**

Plaintiffs Adam DeMarco and Joseph Lee filed an amended complaint (the "AC") alleging claims for deceptive business practices and false advertising under the New York General Business Law ("GBL") as well as claims for New York State common law breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment against Defendant DNVB, Inc., doing business as Thursday Boot Company ("Thursday Boot" or "Defendant"). (*See generally* ECF 25, AC.) Pending before the Court is Defendant's fully briefed motion to dismiss the AC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim (ECF 26). Having carefully reviewed the parties' filings on the docket, and for the reasons that follow, I respectfully recommend that Your Honor should DENY IN PART Defendant's motion to dismiss, in that Your Honor should allow Plaintiffs' claims for deceptive business practices and false advertising to proceed; and I further respectfully recommend that Your Honor should GRANT IN PART Defendant's motion to dismiss, in that Your Honor should dismiss Plaintiffs' claims for injunctive relief and for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.

**I.**

**BACKGROUND**

**A.    Factual Background**

For purposes of the pending motion to dismiss, the Court must accept Plaintiff's well-pleaded allegations as true and draw all reasonable inferences in his favor. *See City of Providence v. BATS Glob. Mkts., Inc.*, 878 F.3d 36, 48 (2d Cir. 2017). I summarize Plaintiffs' allegations below.

Thursday Boot is a company that sells shoes, apparel, handbags, and accessories on its website www.thursdayboots.com. (*See* ECF 25, AC ¶ 14.) The website offers "free shipping and returns in the U. S." according to a banner at the top of the webpage. (*Id.* ¶ 18.)[1] Each product on the website is listed with an "Honest Pricing Guarantee," promising the "Best Price offered year-round." (*Id.* ¶¶ 22-23.)[2] Upon checkout, a "Shipping Protection" fee of $2.98 (the "Fee"), is automatically added to the customer's cart, with an option for the customer to deselect the Fee. (*See id.* ¶¶ 28-29.) Customers are told that if the Fee is not paid Thursday Boot "is not responsible for damaged, lost, or stolen items during shipping." (*Id.* ¶ 34.) Defendant ships its products via United Parcel Service ("UPS"), which will reimburse purchasers of lost or damaged packages valued up to $100; UPS imposes an increased shipping charge for higher-valued goods. (*See id.* ¶¶ 54-55.) In addition to Defendant's website, Defendant also has an Amazon

---

[1]    Unless otherwise indicated, this report and recommendation omits internal quotation marks, citations, and alterations from quoted text.

[2]    After the initial complaint in this matter was filed, Defendant stopped automatically charging the Fee and changed the disclosures on the website. (*See* ECF 25, AC ¶ 18 n.2.) Then, Defendant changed the website again and resumed automatically adding the Fee. (*Id.*)

storefront on which it sells its products and offers free shipping, without the Fee. (*See id.* ¶¶ 25-26.)

      1.    <u>DeMarco</u>

On March 31, 2025, DeMarco ordered sneakers from Defendant's website. (*See id.* ¶ 48.) DeMarco saw that Thursday Boot had free shipping and an "Honest Pricing Guarantee." (*Id.* ¶¶ 49, 51.) The Fee of $2.98 was added to DeMarco's cart after he checked out, and he paid for his purchase, including the Fee. (*See id.* ¶¶ 52-53.) DeMarco would have ordered through the Amazon storefront if he had known of that option and would not have purchased shipping protection if he had known that UPS was liable for lost or damaged packages. (*See id.* ¶¶ 58-59.)

      2.    <u>Lee</u>

On November 28, 2024, Lee ordered merchandise from Defendant's website. (*See id.* ¶ 62.) Lee saw that Thursday Boot had free shipping and "relied on Thursday Boot's promise to provide free shipping in making each of his purchases." (*Id.* ¶ 64.) Lee's purchase included a $2.98 charge that was automatically added after checkout. (*See id.* ¶ 65.) Lee "would not have purchased Shipping Protection if he knew it was optional." (*Id.* ¶ 66.)

**B.    Procedural History**

DeMarco filed a proposed class action complaint against Defendant on April 14, 2025. (*See* ECF 1, Compl.) Lee filed a proposed class action complaint against Defendant on May 23, 2025. (*See* ECF 17, Pls.' Mem. at 3.) Both complaints arose out of Defendant's practice of imposing "Shipping Protection" fees. (*See id.* at 2-3.)

DeMarco and Lee state that they would not have paid the Fee had they known the "truth" (ECF 1, Compl. ¶¶ 59, 71), i.e., that UPS was already liable for damage or loss to their packages. (*See id.* ¶¶ 57, 70.) Plaintiffs argue that Defendant, by charging them the Fee, sold its products at a higher price than advertised and breached its obligation to provide free shipping and honest pricing; Plaintiffs contend that as a result, Defendant has engaged in deceptive business practices and false advertising in violation of GBL §§ 349 and 350 (*see id.* ¶¶ 89, 94, 104); Defendant has breached its contracts with Plaintiffs, including by breaching the implied covenant of good faith and fair dealing; and Defendant was unjustly enriched. (*See id.* ¶¶ 123, 127-28, 132-33.) Plaintiffs seek injunctive relief, restitution, and compensatory, statutory, and punitive damages. (*See id.* ¶¶ 4-5.)

On July 9, 2025, DeMarco filed a motion to consolidate cases and appoint interim lead counsel (ECF 16); the motion to consolidate was granted on July 29, 2025. (*See* ECF 23, Order.) On August 8, 2025, Plaintiffs filed the consolidated amended complaint. (*See* ECF 25, AC.)

On August 22, 2025, Defendant filed a motion to dismiss the AC. (*See* ECF 26, Def.'s Mot. To Dismiss; ECF 27, Def.'s Mem.) On October 3, 2025, Plaintiffs filed their opposition to Defendant's motion. (*See* ECF 32, Pls.' Opp.) On October 23, 2025, Defendant filed its reply to Plaintiffs' opposition. (*See* ECF 38, Def.'s Reply.)

## II.

## <u>LEGAL STANDARD FOR MOTIONS TO DISMISS</u>

Judgment on a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted is appropriate when the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion for failure to state a claim, the Court "must accept as true all of the allegations contained in a complaint," but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

In evaluating a Rule 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Extrinsic evidence may not be considered by the court, because "a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). However, an exception exists for extrinsic documents that are "integral" to the complaint, in that the plaintiff relied heavily upon such documents' "terms and effect" in drafting the complaint, so long as it is "clear on the record that no dispute exists regarding the authenticity or accuracy of the document[s]." *DiFolco*, 622 F.3d at 111.

III.

**DISCUSSION**

**A.      New York GBL §§ 349 and 350 Claims**

Section 349 of the GBL prohibits "[d]eceptive acts or practices in the conduct of any

business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a).

Section 350 of the GBL prohibits "[f]alse advertising in the conduct of any business, trade or

commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 350. Both sections set the

same standard for recovery and consider the same factors. *See Anderson v. Unilever U.S., Inc.,*

607 F. Supp. 3d 441, 451 (S.D.N.Y. 2022). Accordingly, I consider the two claims together.

1.   Legal Standards

To state a prima facie case under Sections 349 or 350, "a plaintiff must allege that a

defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and

that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Wynn v.*

*Topco Assocs., LLC,* No. 19-CV-11104 (RA), 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021)

(quoting *Orlander v. Staples, Inc.* 802 F.3d 289, 300 (2d Cir. 2015)). Consumer-oriented conduct

is conduct that impacts consumers, such as disseminating information to the public or engaging

in a practice that could affect similarly situated customers. *See Anderson,* 607 F. Supp. 3d at

451.

Materially misleading conduct is behavior that would mislead the reasonable consumer.

*See id.* at 452. Plaintiffs must show that a significant portion of the public, when "acting

reasonably under the circumstances," could be misled by the behavior at issue. *Duran v. Henkel*

*of Am., Inc.*, 450 F. Supp. 3d 337, 346, 349-50 (S.D.N.Y. 2020) (collecting cases). "A reasonable consumer includes those who, in making purchases, do not stop to analyze but are governed by appearances and general impressions." *Paradowski v. Champion Petfoods USA, Inc*., No. 22-962, 2023 WL 3829559, at *2 (2d Cir. June 6, 2003) (quoting *Guggenheimer v. Ginzburg*, 43 N.Y.2d 268, 273 (1977)).

The reasonable consumer standard is typically a question of fact that cannot be resolved on a motion to dismiss. *See Duran*, 450 F. Supp. 3d at 346; *Buonasera v. Honest Co., Inc.* 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016). However, "a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Chufen Chen v. Dunkin' Brands, Inc.,* 954 F.3d 492, 500 (2d Cir. 2020). For example, a plaintiff's implausible or unrealistic claims regarding what a reasonable consumer would think may be dismissed as a matter of law, *see Anderson,* 607 F. Supp. 3d at 452, although a court may not dismiss a claim simply because "there is an alternative, non-misleading interpretation," *id*.

A plaintiff can plead an injury caused by the allegedly deceptive act or practice by alleging that he did not receive the full value of his purchase because of "an overpayment, or a price premium, whereby a plaintiff pays more than she would have but for the deceptive practice." *Id.* at 455.

To obtain injunctive relief under GBL §§ 349 or 350, a plaintiff must show "the three familiar elements of standing: injury in fact, causation, and redressability." *Carovillano v. Sirius XM Radio Inc.,* 715 F. Supp. 3d 562, 583 (S.D.N.Y. 2024) (quoting *Cacchillo v. Insmed, Inc.,* 638 F.3d 401, 404 (2d Cir. 2011)). Demonstrating injury in fact requires a showing of "real or immediate threat of future injury," not a possible future injury. *Id.*

2.  <u>Consumer-Oriented Conduct</u>

Defendant does not contest that it engaged in consumer-oriented conduct, and I

conclude that there is consumer-oriented conduct sufficient for claims under Sections 349 and

350.

3.  <u>Materially Misleading Conduct</u>

Plaintiffs' claims under Sections 349 and 350 claims arise out of both the Fee and

Defendant's "Honest Pricing Guarantee," but Defendant addresses only the former in its

motion to dismiss, leading Plaintiffs to argue that Defendant has waived any arguments in

support of dismissing their claims based on the Honest Pricing Guarantee. (*See* ECF 32, Pls.'

Opp. at 4-5.) Plaintiffs are correct that the argument is waived. *See Ohr Somayach/Joseph*

*Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 206 n.6 (S.D.N.Y. 2020) (holding

that the plaintiff waived an argument for dismissal of the defendant's counterclaims because

the plaintiff did not raise the argument in the motion to dismiss briefing). However, the

argument fails on the merits as well. Whether the Honest Pricing Guarantee was a deceptive

practice depends on whether the Fee was misleading, and, as set forth below, Plaintiffs have

adequately pleaded that the Fee was misleading for purposes of their claims under Sections

349 and 350.

a.  The Parties' Arguments

Defendant argues that Plaintiffs have not adequately pleaded that its conduct was

materially misleading to a reasonable consumer for three reasons: (1) the Fee was clearly

disclosed on the checkout page "in the same size and font as the product price, together with

an adjacent option to remove the charge" (ECF 27, Def.'s Mem. at 8); (2) shipping protection is

8

distinct from shipping, so that a charge for shipping protection did not negate Defendant's promise of free shipping (*see id.* at 9-10); and (3) the shipping protection bought by the Fee provided value to buyers by allowing them to recover from Defendant for lost or damaged packages, thereby relieving buyers "of the responsibility to pursue relief" for lost or damaged packages from the shipping companies (*id.* at 13-14).

Plaintiffs counter that whether a reasonable consumer would have been misled is a question of fact that cannot typically be resolved on a motion to dismiss and that they have adequately alleged several ways that Defendant's conduct was materially misleading. (*See* ECF 32, Pls.' Opp. at 6-8.) Plaintiffs assert that reasonable consumers would understand Defendant's free shipping representation to mean that customers would not be charged any shipping-related fees, yet Defendant used a "negative option feature" that automatically applied the Fee to shopping carts and required customers to take affirmative action to reject the Fee or cancel the contract. (*Id.* at 7, 11-12.) Plaintiffs contend that the combination of the free shipping representation and the negative option to remove the Fee was misleading to reasonable consumers and that Defendant's behavior was made more misleading by Defendant's last-minute inclusion of the Fee – a practice known as "drip pricing," which commentators have criticized as being deceptive. (*See id.* at 10.)

Additionally, Plaintiffs argue that Defendant's statement that Defendant was "not responsible for damaged, lost, or stolen items during shipping" (ECF 25, AC ¶ 34) would lead "a consumer to believe that they will bear all risk of loss" if they did not pay the Fee, even though buyers were already entitled to such compensation because either (1) Defendant's contracts with buyers were "destination contracts," meaning that Defendant agreed to deliver purchases

to buyers and therefore was responsible for any losses or damage to packages (ECF 32, Pls.'
Opp. at 13-17), or (2) even if Defendant's agreements with customers were shipment contracts
that relieved Defendant from responsibility for damage or loss once the packages were
collected by the carrier, buyers could recover from the carrier (*see id.* at 17-18). Plaintiffs
conclude that the Fee was materially misleading because it provided them with no additional
protection or other benefit. (*See id.* at 18).

> b.  Analysis

Defendant's argument that there can be no claim under Sections 349 or 350 because
the Fee was fully disclosed (*see* ECF 27, Def.'s Mem. at 8-10) fails to take into account the
meaning of full disclosure. Full disclosure occurs when a party "is provided with all the
information necessary to understand [a] practice and its consequences." *Birenbaum v.
Bridgestone Retail Operations, LLC,* No. 24-CV-3611 (JMA) (LGD), 2025 WL 2308606, at *4
(E.D.N.Y. June 13, 2025), *report and recommendation adopted,* 2025 WL 2306641 (E.D.N.Y. Aug.
11, 2025). Here, the Fee was disclosed in the sense that Plaintiffs saw a description of the Fee
prior to their purchases and opted to pay. However, whether Defendant's disclosure provided
Plaintiffs with sufficient information to understand the significance of the Fee is a question of
fact that cannot be assessed on a motion to dismiss. *See id.* at *6 (explaining that whether
reasonable consumer could have acquired sufficient information about an add-on charge prior
to purchase is a question of fact that cannot be resolved on a motion to dismiss).

Defendant is correct that a reasonable consumer would understand the difference
between shipping and shipping protection. *See Ramos v. EyeBuyDirect, Inc.,* No. 25-CV-0539
(JVS) (DFM), 2025 WL 2633103, at *8 (C.D. Cal. Aug. 27, 2025) (holding that a shipping

protection fee was not likely to deceive a reasonable consumer because "a reasonable consumer was likely to understand that" the fee was optional and that the fee "likely provides additional protection not offered by general mail carriers"); *cf. Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 227-28 (S.D.N.Y. 2011) (holding that a reasonable consumer would understand the distinction between purchasing event tickets from a primary seller and on the "secondary ticket market" and would understand the price differences for either option). Accordingly, the Fee did not negate the promise of free shipping. Nevertheless, the website provided insufficient information to allow reasonable consumers to understand the nature of the shipping protection secured by the Fee: the website did not disclose whether Defendant's contracts with customers were destination or shipment contracts, and even if the website had contained that information, a reasonable consumer likely would be unaware that the carrier would bear the risk of loss or damage during transit under a shipment contract and that the seller would bear the risk under a destination contract. This information was not found on Defendant's website. (*See* ECF 25, AC ¶¶ 36-37, 41-42.)

While the parties dispute whether their contract was a shipment contract or a destination contract, "[w]here the terms of an agreement are ambiguous, there is a strong presumption under the U.C.C. favoring shipment contracts." *Windows, Inc. v. Jordan Panel Sys. Corp.,* 177 F.3d 114, 117 (2d Cir. 1999) (holding that the buyer's purchase order was a contract for goods and a shipment contract instead of a destination contract because the contract did obligate the seller either explicitly or through "any commonly recognized industry term" to deliver the goods). Plaintiffs have not alleged facts rebutting the presumption that the contracts were shipment contracts. Nevertheless, it is plausible that a reasonable customer

would not understand that they had entered a shipment contract with Defendant, or that under a shipment contract the carrier would be liable for any loss of or damage to packages during transit. *See Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.,* 37 N.Y.3d 169, 181 (2021) (holding that, to prevail on a GBL § 349 claim, "[t]he defendant must do more than disclaim liability generally; instead, a disclaimer must address the alleged deceptive conduct precisely, so as to eliminate any possibility that a reasonable consumer would be misled"). Accordingly, while Defendant's disclaimer during check-out – that if a customer did not pay the Fee, Defendant would not be "responsible for damaged, lost, or stolen items during shipping" (ECF 25, AC ¶ 29) – was technically accurate, the failure to disclose that the carrier was responsible for loss or damage during transit might "undermine [the] consumer's ability to evaluate his or her market options and to make a free and intelligent choice." *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.,* 953 N.Y.S.2d 96, 102 (2d Dep't 2012) (holding that a GBL § 349 claim could proceed on the basis of misinformation that affected the "consumer's decision to participate in a particular transaction"); *cf. F.T.C. v. Five-Star Auto Club, Inc.,* 97 F. Supp. 2d 502, 532-33 (S.D.N.Y. 2000) (holding that the defendants' "[f]ailure to disclose pertinent information" was deceptive and "a material omission in violation of the [Federal Trade Commission] Act").

Furthermore, even if a reasonable consumer would have understood from Defendant's disclosures that the Fee purchased Defendant's commitment to bear the risk of loss or damage – which arguably added value because Defendant would not bear that risk under the terms of the parties' shipment contract – it is not clear that Plaintiffs knew "that [the Fee] w[as] optional." *Birenbaum,* 2025 WL 2308606, at *5 (denying the defendant's motion to dismiss a

GBL § 349 claim because, although additional fees were disclosed on an invoice prior to purchase, the plaintiff did not know those fees were optional since they had been included alongside mandatory payments). Indeed, Lee alleges that he would not have paid the Fee had he known it was optional. (*See* ECF 25, AC ¶ 66.)

Defendant's addition of the Fee to customers' carts at the very end of the transaction added to the confusion and could plausibly have misled reasonable consumers about whether the Fee was optional. (*See* ECF 32, Pls'. Opp. at 10.) Plaintiffs note that the articles cited by Defendant in support of its motion to dismiss, which state that offering shipping protection has become commonplace, also opine that adding fees for shipping protection at the end of the transaction is misleading to the average consumer. (*See id*. at 10 & n.3 (quoting Imani Moise, *Porch Pirates Are Now Raising the Price You Pay at Checkout*, WALL ST. J. (Dec. 25, 2024 at 5:30 ET), available at https://www.wsj.com/personal-finance/package-theft-hidden-fee-higher-prices-325c4a34, for the proposition that "Federal Trade Commission and Consumer Financial Protection Bureau officials say showing fees only at the end of the transaction, known as drip pricing, is a deceptive practice" and that customers "are less likely to shop around for a better price once they start the check out process").)

It is plausible that a reasonable consumer would conclude that the Fee was required, based on its automatic inclusion in the shopping cart. *See Hampton v. Caraway Home, Inc.,* No. 25-CV-3489 (MRA) (MAR), 2025 WL 2994565, at *4 (C.D. Cal. Sept. 12, 2025) (holding that under California's Unfair Competition Law, Consumer Legal Remedies Act, and False Advertising Law, a "reasonable consumer could be deceived by the addition of [a shipping protection] fee and whether it is mandatory" where the fee was automatically added to the customer's

shopping cart, was not clearly disclosed as optional, and allowed customers to opt out by

unchecking a checkbox). At this stage in the litigation, it is not appropriate to conclude as a

matter of law that a reasonable consumer would have understood the Fee to be optional. *See*

*Birenbaum,* 2025 WL 2308606, at *5 (explaining that, even if a factfinder eventually determines

that a reasonable consumer would know the fee was optional, accepting this premise on a

motion to dismiss would mean that "no deceptive act would be actionable under Section 349

because the consumer had the option not to engage in the transaction at all").

    4.  <u>Actionable Injury</u>

        a.  The Parties' Arguments

Defendant argues that Plaintiffs have failed to plead actual harm, because Plaintiffs'

"subjective[ ] belie[f] or wish[ ] that the [shipping] protection should be free does not convert

an optional, disclosed service charge into a cognizable injury." (ECF 27, Def.'s Mem. at 14.)

Defendants conclude that the full disclosure, the optional nature of the Fee, and Plaintiffs'

receipt of their packages mean that the Fee was neither materially misleading nor harmful to

Plaintiffs. (*See id.* at 14-15.)

Plaintiffs respond that their allegations that they paid the Fee and would not have done

so had they known that it provided no actual protection is sufficient to adequately plead

concrete injury. (*See* ECF 32, Pls.' Opp. at 18.)

        b.  Analysis

A plaintiff adequately demonstrates concrete injury by alleging he paid "more than [he]

would have absent the alleged omission." *Birenbaum,* 2025 WL 2308606, at *8; *see also*

*Dunham v. Sherwin-Williams Co.,* 636 F. Supp. 3d 308, 316 (N.D.N.Y. 2022) (holding on a motion

14

to dismiss a GBL § 349 claim that the plaintiff had shown injury where the "defendant raised its prices under the guise of a surcharge, thereby causing her to pay more for defendant's products than she should have"); *Ward v. TheLadders.com, Inc.,* 3 F. Supp. 3d 151, 170 (S.D.N.Y. 2014) (finding that the plaintiffs had adequately pleaded actual injury where the plaintiffs alleged that the defendant's representations induced them to pay for additional services); *cf. Ramos*, 2025 WL 2633103, at *10-11 (denying the motion to dismiss California consumer protection law claims after holding that, where the defendant promised free shipping on its website and automatically added a shipping insurance fee to the customer's cart at checkout, a reasonable consumer would not be aware that the insurance fee was optional and that the plaintiff had shown that she would not have purchased the insurance "absent [the defendant]'s representations"). Plaintiffs' allegations that they relied on Defendant's representations regarding shipping and would not have paid the Fee had they known that they could recover from UPS for loss or damage (*see* ECF 25, AC ¶¶ 97, 114) adequately pleads concrete injury.

    5.  Injunctive Relief

    Plaintiffs do not have standing to seek injunctive relief. Plaintiffs' claims "mirror others consistently rejected by other courts in this Circuit when considering a consumer's standing for injunctive relief after the purchase of a deceptively marketed product." *Duran,* 450 F. Supp. 3d at 346. Here, as in those cases, there is no real or immediate threat of future injury. Plaintiffs argue that they want to ensure they will not be harmed in the future if they decide to purchase goods from Defendant again. (*See* ECF 25, AC ¶ 61 (alleging that "DeMarco may purchase goods from Defendant in the future"); *id.* ¶ 73 (alleging that "Lee may purchase goods from Defendant in the future").) Similar arguments have been rejected by several courts in this

Circuit. *See Carovillano,* 715 F. Supp. 3d at 584 (explaining that, as past purchasers now alert to the deceptive practice, the plaintiffs could not claim the future harm required to support a need for injunctive relief); *Buonasera,* 208 F. Supp. 3d at 564-65 (holding that, without demonstrating a likelihood of future injury, the plaintiff did not have standing to seek injunctive relief). *But see Petrosino v. Stearn's Prods., Inc.,* No. 16-CV-7735 (NSR), 2018 WL 1614349, at *5 (S.D.N.Y. Mar. 30, 2018) (holding that the plaintiff had standing to seek injunctive relief because the plaintiff alleged that she would buy the defendant's products if the deceptive practice was corrected). I conclude that the better reasoned cases conclude that the plaintiffs lack standing because there is no real or immediate threat of future injury.

***

For the foregoing reasons, I respectfully recommend that Your Honor should DENY Defendant's motion to dismiss Plaintiffs' claims under GBL §§ 349 and 350; however, because there is no real or immediate threat of future harm to Plaintiffs, I respectfully recommend that Your Honor should GRANT Defendants' motion to dismiss Plaintiffs' claims for injunctive relief under those statutes based on a lack of standing pursuant to Rule 12(b)(1).

## B.    Breach of Contract

The parties agree that there was a contract. Plaintiffs allege that the Fee was an unauthorized add-on that breached the terms of the contract between them and Defendant. (*See* ECF 25, AC ¶ 128.)

### 1.    Legal Standards

Under governing New York law, "[t]o plead a cause of action for breach of contract, a plaintiff usually must allege that: (1) a contract exists; (2) plaintiff performed in accordance with

the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages." *Beck v. Metro. Bank Holding Corp.,* 747 F. Supp. 3d 442, 459 (E.D.N.Y. 2024) (quoting *34–06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52 (2022)).

2.  The Parties' Arguments

Defendant argues that it breached no term of the sales contract because (1) Defendant disclosed the Fee and thus gave Plaintiffs notice prior to purchase and acceptance and (2) Defendant did not breach the obligation to offer the loss mitigation purchased by the Fee. (*See* ECF 27, Def.'s Mem. at 15-16.)[3] Plaintiffs counter that they accepted Defendant's offer by proceeding to check-out, so that adding the Fee after their acceptance reflected a material change to the contract. (*See* ECF 32, Pls.' Opp. at 22-23.)

3.  Analysis

The Second Circuit has held that an online contract is formed when a consumer with inquiry notice of the terms unambiguously manifests assent. *See Edmundson v. Klarna, Inc.,* 85 F.4th 695, 703 (2d Cir. 2023) (analyzing a contract under Connecticut law but explaining that the law of contract formation does not vary meaningfully between Connecticut and New York); *Wu v. Uber Techs., Inc.*, 43 N.Y.3d 288, 302-04 (2024) (relying on *Edmonson* in interpreting New York law). An online seller provides inquiry notice when the website presents the consumer with the contractual terms "in a clear and conspicuous way." *Edmundson,* 85 F.4th at 704.

---

[3]    Defendant also argues that Plaintiffs' breach of contract claims fail because Plaintiffs received what they paid for – shipping protection from Defendant as opposed to the carrier – and therefore suffered no damages. (*See* ECF 27, Def.'s Mem. at 15.) I do not address this argument in light of my conclusion that Defendant did not breach its contract with Plaintiff.

Determining whether an online seller has provided inquiry notice includes an evaluation of "whether the term was obvious and whether it was called to the offeree's attention." *Davitashvili v. Grubhub Inc.,* 131 F.4th 109, 116 (2d Cir. 2025). This is a context-specific inquiry that considers factors such as the size, color, and placement of the disputed terms. *See id.*; *see also Edmundson,* 85 F.4th at 704.

Here, Defendant presented the Fee as an additional line item in Plaintiffs' carts in the same font size as the other items in the cart, and Plaintiffs admit that they saw the Fee prior to paying for their purchases and that their payments included the Fee. (*See* ECF 25, AC ¶¶ 27-29, 52-53, 65.) Plaintiffs' payments (including of the Fee) unambiguously demonstrated assent to the Fee. *See Edmundson,* 85 F.4th at 708. ("[S]electing [c]onfirm and continue clearly does constitute such assent [to the defendant's terms].") Plaintiffs cannot claim that adding the Fee to their carts was a breach of contract, because no valid contract existed until Plaintiffs unambiguously demonstrated their acceptance by paying for their purchases, including the disclosed Fee.

Accordingly, I respectfully recommend that Your Honor should GRANT Defendant's motion to dismiss Plaintiffs' breach of contract claims.

## C.    Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs allege that Defendant's automatic addition of the Fee at checkout after promising free shipping and honest pricing along with Defendant's misrepresentation of the risks associated with not paying the Fee violate the covenant of good faith and fair dealing. (*See* ECF 25, AC ¶¶ 132-33.)

1. <u>Legal Standards</u>

New York Law states that "all contracts imply a covenant of good faith and fair dealing in the course of performance." *Beck,* 747 F. Supp. 3d at 462. The covenant is breached when "one party to a contract seeks to prevent its performance by, or to withhold its benefits from, the other." *Id.* at 463. A claim for breach of the implied covenant should be dismissed as duplicative of a breach of contract claim when both claims are based on the same set of facts and seek the same damages. *See id.* (collecting cases).

2. <u>Analysis</u>

Defendant argues that Plaintiffs cannot plead both a breach of contract claim and a claim for breach of the implied covenant of good faith and fair dealing, because both claims arise from the same facts. (*See* ECF 27, Def.'s Mem. at 18.) Plaintiffs concede in their opposition to the motion to dismiss that their claim for breach of contract "subsumes the claim for breach of implied duty of good faith and fair dealing." (ECF 32, Pls.' Opp. at 23.) Accordingly, I respectfully recommend that Your Honor should GRANT Defendant's motion to dismiss Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing. *See Beck,* 747 F. Supp. 3d at 464 (dismissing a claim for breach of the implied covenant that was based on the same facts as the plaintiff's breach of contract claim).[4]

---

[4]    Defendant also argues that Plaintiffs have not adequately pleaded that Defendant withheld from Plaintiffs the benefits of their contracts, as required to state a claim for breach of the implied covenant of good faith and fair dealing, because Plaintiffs voluntarily added the Fee and received the benefit of it. (*See* ECF 27, Def.'s Mem. at 17-18.) I do not address this argument in light of my conclusion that the claims for violation of the implied covenant of good faith and fair dealing are duplicative of the breach of contract claims.

19

**D.    Unjust Enrichment**

Plaintiffs allege that by paying the Fee, they conferred a benefit on Defendant that "would be unjust to allow Defendant to retain." (ECF 25, AC ¶¶ 121-22.)

1.    Legal Standards

Unjust enrichment "is a quasi-contractual theory of recovery that exists in the absence of an affirmative agreement." *Ford v. Rensselaer Polytechnic Inst.*, 507 F. Supp. 3d 406, 419 (N.D.N.Y. 2020) (citing *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.,* 448 F.3d 573, 586-87 (2d Cir. 2006)). "The basic elements of an unjust enrichment claim in New York require proof that (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) equity and good conscience militate against permitting the defendant to retain what the plaintiff is seeking to recover." *Anderson,* 607 F. Supp. 3d at 463 (quoting *Briarpatch Ltd. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 306 (2d Cir. 2004)).

Under New York law, unjust enrichment claims may not be "a catchall cause of action to be used when others fail" or to duplicate a claim for breach of contract, tort, or breach of a statute. *Anderson,* 607 F. Supp. 3d at 463. Where an unjust enrichment claim is duplicative of a breach of contract claim, tort claim, or statutory claim – arising from the same facts and alleging the same damages – the unjust enrichment claim must be dismissed. *See id.*

2.    The Parties' Arguments

Defendant argues that Plaintiffs' unjust enrichment claims are duplicative of Plaintiffs' claims under GBL §§ 349 and 350 and "redundantly recast[s]" their breach of contract claims. (*See* ECF 27, Def.'s Mem. at 16-17.) Plaintiffs respond that they bring their unjust enrichment claims in the alternative. (*See* ECF 32, Pls.' Opp. at 23-24.)

3.  <u>Analysis</u>

Unjust enrichment claims are available "only in unusual circumstances" when there is

no contract, tort, or statutory claim. *See Anderson,* 607 F. Supp. 3d at 463. Unjust enrichment

claims are unavailable when they rely on the same facts as a plaintiff's contract, tort, or

statutory claims. *See id.* Courts in this District have not hesitated to dismiss unjust enrichment

claims that are duplicative of existing contract, tort, or statutory claims. *See, e.g.*, *id.*; *Wedra v.*

*Cree, Inc.,* No. 19-CV-3162 (VB), 2020 WL 1322887, at *11 (S.D.N.Y. Mar. 20, 2020); *Buonasera*,

208 F. Supp. 3d at 568; *Carovillano,* 715 F. Supp. 3d at 586. Because Plaintiffs do not dispute

that they had a contract with Defendant, Plaintiffs' "only remedy is the contractual damages to

the extent that the defendant breached the [contract]." *Ward,* 3 F. Supp. 3d at 165 (dismissing

the plaintiffs' unjust enrichment claim because the parties' obligations were governed by a

valid, written agreement); *see also Dunham*, 636 F. Supp. 3d at 319 (dismissing the plaintiff's

unjust enrichment claim pleaded in the alternative because there was no dispute as to the

validity of the parties' agreement). Accordingly, I respectfully recommend that Your Honor

should GRANT Defendant's motion to dismiss Plaintiffs' unjust enrichment claims.

<u>**CONCLUSION**</u>

For the foregoing reasons, I respectfully recommend that Your Honor should DENY IN

PART Defendant's motion to dismiss the AC, in that Your Honor should permit Plaintiffs' claims

under GBL §§ 349 and 350 to proceed. I further respectfully recommend that Your Honor

should GRANT IN PART Defendant's motion to dismiss the AC, in that Your Honor should

21

dismiss Plaintiff's claims for injunctive relief and for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.

DATED:    December 5, 2025
          New York, New York

Respectfully Submitted,

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION

The parties shall have fourteen days (including weekends and holidays) from service of this report and recommendation to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any responses to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections or responses to objections must be addressed to Judge Woods.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).